Case: 1:16-cv-00114-DAP Doc #: 25 Filed: 08/07/17 1 of 15. PageID #: 256
Case: 1:16-cv-00114-DAP Doc #: 51 Filed: 03/30/18 11 of 55. PageID #: 253

**Exhibit 1**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **CAMILLE WILSON,** | ) | **CASE NO. 1:16-cv-00114-DAP** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| vs. | ) | <u>**ORDER**</u> |
| | ) | |
| **UNIVERSITY HOSPITALS CASE,** | ) | |
| **MEDICAL CENTER, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is Motion for Judgment on the Pleadings, Doc #: 13. For the reasons discussed below, this motion is granted in part and denied in part.

**I. Background**

    **A. Factual Allegations**

Defendant University Hospitals Case Medical Center ("UHCMC") employed Plaintiff Camile Wilson ("Ms. Wilson"), an African-American female, from December 2009 to January 2014 as an Equipment Technician and Operations Assistant in the Pediatric Respiratory Care Department. Compl. ¶¶ 1, 3, Doc #: 1-1; Empl. Letter, Doc #: 4-2; Am. Compl. ¶¶ 11, 12, Doc #: 18.

Ms. Wilson alleges that she applied for her position online and was not able to receive a copy of the last page of the application (which contained a waiver) that she signed. Appl. For

Empl. 4, Doc #: 4-1; Am. Compl. ¶ 13. The waiver on the last page of the application subjected her to a shortened six-month contractual limitations period for all claims or lawsuits relating to her service with UHCMC:

> READ CAREFULLY BEFORE SIGNING
> I agree that any claim or lawsuits relating to my service with University Hospitals or any of its subsidiaries or affiliates must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. I waive any statute of limitations to the contrary.

Appl. For Empl. 4.

Ms. Wilson alleges that shortly after she began her employment at UHCMC, a co-worker (and fellow employee of UHCMC) began to harass Ms. Wilson about her race. Compl. ¶¶ 10, 11; Am. Compl. ¶¶ 19–21. Ms. Wilson reported the harassment to her immediate supervisor, the Human Resources Department, the Employee Assistance Program, the CEO, and the University Police Department. Compl. ¶ 12; Am. Compl.¶¶ 22, 37, 40, 44–46. The co-worker ignored UHCMC's instructions to stay away from Ms. Wilson and repeatedly entered Ms. Wilson's workstation in order to provoke her. Compl. ¶ 11; Am. Compl. ¶ 21.

In October 2014, UHCMC ordered plaintiff to submit to a medical health examination and threatened her with insubordination as a consequence for refusal. Compl. ¶ 14; Am. Compl. ¶ 24. Ms. Wilson does not believe that the exam was job related or consistent with business necessity. Compl. ¶ 14; Am. Compl. ¶ 26. On October 17, 2014, Ms. Wilson submitted to the exam. Compl. ¶ 14; Am. Compl. ¶ 25; Ohio Civil Rights Commission Form, Doc #: 13-3 [hereinafter "First OCRC Form"]. The exam results and all performance reviews showed that Ms. Wilson was fit for job duties. Compl. ¶ 14; Am. Compl. ¶ 25.

In January 2015, a three-person panel, consisting of Ms. Wilson's supervisor, the Vice President of Nursing, and the President of Rainbow Hospital, decided to eliminate Ms. Wilson's employment allegedly as part of a reduction in force. Compl. ¶ 15; Am. Compl. ¶ 28–31. Ms. Wilson alleges, however, that UHCMC's panel members chose to eliminate her position in retaliation for her complaints and out of racial animus. Compl. ¶ 15; Am. Compl. ¶¶ 29–31.

### B. Procedural History

On October 29, 2014, Ms. Wilson dual-filed her first charge, involving harassment, retaliation, and other events that took place before her termination, with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 7; Am. Compl. ¶¶ 14, 15; First OCRC Form. The EEOC issued a right-to-sue letter on September 30, 2015. Compl. ¶ 8; Am. Compl. ¶ 16; EEOC Notice, Compl. Doc #: 1-1 [hereinafter "First EEOC Notice"].

UHCMC terminated Ms. Wilson's employment on January 5, 2015. Am. Compl. ¶ 35. On January 14, 2015, Ms. Wilson dual-filed her second charge against UHCMC, involving her termination, with the OCRC and the EEOC. Compl. ¶ 7; Am. Compl. ¶¶ 14, 15; Ohio Civil Rights Commission Form, Doc #: 13-4 [hereinafter "Second OCRC Form"]. On December 28, 2015, before the EEOC issued a right-to-sue letter for the second charge against UHCMC, Ms. Wilson filed suit in the Cuyahoga County Common Pleas Court. Compl. ¶ 8; First EEOC Notice.

On January 19, 2016, UHCMC removed the case to this court. Notice of Removal, Doc #: 1. During a teleconference following removal, the Court ordered Ms. Wilson to obtain and file a right-to-sue letter from the EEOC for her second claim. On January 28, 2016, the EEOC issued the right-to-sue letter for the second charge against UHCMC. Am. Compl. ¶ 16; EEOC Notice,

Doc #: 6 [hereinafter "Second EEOC Notice"]. Ms. Wilson filed the right-to-sue letter on February 5, 2016. Second EEOC Notice; Am. Compl. ¶ 16.

On January 26, 2016, UHCMC filed its Answer to Ms. Wilson's Complaint. Doc #: 4. On February 25, 2016, UHCMC filed the instant Rule 12(c) Motion for Judgment on the Pleadings (the "Motion"). Doc #: 13.

Subsequent to the filing of the Motion, Ms. Wilson has filed an Amended Complaint, Doc #: 18. Ms. Wilson's Amended Complaint alleges claims for Hostile Work Environment, Disability Discrimination, Interference with Exercise of Rights in Violation of the Family Medical Leave Act, Wrongful Retaliatory Discharge, Disability Discrimination, and Violation of Ohio Public Policy. Am. Compl. ¶¶ 47–93. Thereafter, UHCMC filed a Partial Motion to Dismiss. Doc #: 23. On May 27, 2016, the Court stayed briefing of the Partial Motion to Dismiss pending a decision on the Motion.

**II. Legal Standard**

Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." When reviewing Rule 12(c) motions for judgment on the pleadings, courts in the Sixth Circuit apply the plausibility standard established in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012); *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001) ("The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."). Specifically, "plaintiffs must 'plead . . . factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*HDC* at 611 (alteration in original) (quoting *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010)). To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A 12(c) motion for judgment on the pleadings will be granted when "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014) (quoting *Paskvan v. City of Cleveland Civ. Serv. Com'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). When evaluating Rule 12(c) motions, a court "construes the complaint in a light most favorable to the plaintiff, accepts all factual allegations as true, and determines whether the complaint states a plausible claim for relief." *HDC*, 675 F.3d at 611. A court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006).

"A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ.P. 10(c). Therefore,

> In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer. The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice.

*Dudek v. Thomas*, 702 F. Supp. 2d 826, 832 (N.D.Ohio 2010) (citation omitted) (citing *Whittiker*

-5-

*v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 924–25 (N.D.Ohio 2009); *Greenberg v. Life Ins.Co.*, 177 F.3d 507, 514 (6th Cir.1999)).

**III. Discussion**

An amended complaint would normally moot a motion for judgment on the pleadings, as such a motion is directed at the original complaint and answer. However, here, because the facts alleged in the Amended Complaint are substantially identical to those in the original Complaint, because the basis on which UHCMC seeks judgment on the pleadings remains applicable, and because the Motion has been fully briefed, denying the Motion and permitting UHCMC to file another motion for judgment on the pleadings directed at the Amended Complaint would be a waste of resources for the Court and for the parties. *See, e.g.*, *Shame on You Prod. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1141 (C.D. Cal. 2015) (construing a motion for judgment on earlier pleadings as a motion against current pleadings). *See generally* Fed. R. Civ. Proc. 1 ("[The Rules of Civil Procedure] should be construed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding."). Moreover, the Parties have functionally—if not expressly—consented to the Court deciding the instant Motion for Judgment on the Pleadings prior to ruling on UHCMC's Partial Motion to Dismiss.[1] Thus, when reviewing the Motion, the Court will construe the Motion as against both the Complaint and the Amended Complaint, to avoid needless refiling.

---

[1] UHCMC's later Partial Motion to Dismiss, Doc #: 23, references and incorporates the Motion (though the Court would likely be unable to consider all of UHCMC's documents on a 12(b)(6) motion). Also, Ms. Wilson requested a stay of the Partial Motion to Dismiss briefing until after the question of the six-month limitation was resolved by the Court. Doc #: 24.

The Motion brings two issues before the Court: 1) whether the six-month contractual limitations clause in the application that Ms. Wilson signed when applying to UHCMC bars those of her federal law claims which arise from events that occurred during her employment, prior to her termination on October 29, 2014, and 2) whether the limitations clause bars all of Ms. Wilson's state law claims because she waited too long to file suit after the relevant employment actions occurred.

### A. Federal Claims

Determining whether UHCMC's six-month limitations period bars any of Ms. Wilson's federal claims brought pursuant to Title VII—or other laws which require EEOC authorization prior to suit—requires two inquires.

#### 1. The Waiver as Written

First, the Court must address whether a limitation on lawsuits of six months after the date of the employment action is reasonable or enforceable as written. With regard to contractual limitations waivers, the Supreme Court has held that,

> [I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.

*United Commercial Travelers v. Wolfe*, 331 U.S. 586, 608 (1947). In general, the Sixth Circuit finds "nothing inherently unreasonable about a six-month limitations period." *Myers v. W. & S. Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir.1988). However, this general rule is not without limit. Relevant here, a six-month contractual limitations period cannot apply to Family Medical Leave Act claims. 29 C.F.R. § 825.220(a)(1); 29 C.F.R. § 825.220(d); *see Lewis v. Harper Hosp.*, 241

F. Supp. 2d 769, 772 (E.D. Mich. 2002). The appropriateness of a six-month limitations period applied to claims which require EEOC authorization (such as a claim brought pursuant to Title VII), however, is less clear and requires greater discussion.

Under Title VII, once an unlawful employment practice occurs, a person must file a charge of discrimination with the EEOC within 180 days. 42 U.S.C. § 2000e-5(e)(1). This filing does not serve as a complaint, and civil action does not commence. *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 455 (6th Cir.1999) (citing *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68, (1984)). After the party files the charge with the EEOC, the EEOC retains exclusive jurisdiction over the charge for 180 days in order to review the charge for reasonableness and to attempt to eliminate the alleged problem by informal methods. 42 U.S.C. § 2000e-5(b). If the informal methods fail, and "reasonable cause" exists, the EEOC may choose to bring an action itself, or may issue a right-to-sue letter to the aggrieved party, allowing that party to sue. *See* 29 C.F.R. § 1601.28(b). An individual may not file suit under Title VII if he or she does not possess a right-to-sue letter from the EEOC. *See Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir.1998). If the 180-day exclusive jurisdiction period expires and the EEOC has not made a "reasonable cause" finding, the aggrieved party may request a right-to-sue letter. *See* 29 C.F.R. § 1601.28(a). Once the EEOC issues a right-to-sue letter, the aggrieved party has ninety days to file suit against the employer. 42 U.S.C. § 2000e-5(f)(1).

A large number of district courts have held that contractual limitation periods of six-months are unreasonable, unenforceable, or void in Title VII and other cases with EEOC filing requirements because such limitations "would have the effect of abrogating Plaintiff's ability to

bring a Title VII suit." *Lewis*, 241 F. Supp. 2d at 772.[2] UHCMC suggests that *Thurman v. DaimlerChrysler Corp.* held that a six-month limitations period was reasonable as to Title VII claims. 397 F.3d 352 (6th Cir. 2004). However, as the court in *Fritz v. FinancialEdge Community Credit Union* explained in some detail, *Thurman* did not rule on any Title VII claims:

> The only reference to Title VII in the opinion addresses the original complaint in the first case that was dismissed. Moreover, a review of the complaint in the second case, *Thurman v. DaimlerChrysler, Inc.*, E.D. Mich. Case Number 01–73446 ECF No. 1, confirms that no Title VII claim was included. Because there is no other clear precedent regarding a 180–day limitation on Title VII claims, and because the reasoning in *Lewis* is sound, the Court concludes that any period of 180 days or less is preempted by the EEOC's period of exclusive jurisdiction and necessarily precludes any judicial consideration of Plaintiff's claim.

835 F. Supp. 2d 377, 383 (E.D. Mich. 2011). Similarly, this Court joins *Lewis* (and many other district courts) and holds that, in order to be enforceable, a contractual limitation period related to a claim with an EEOC filing requirement must not abrogate a plaintiff's ability to bring suit.

---

[2]*See, e.g.*, *Sanford v. Quicken Loans,* No. 13–11929, 2014 WL 266410, at *4, 2014 U.S. Dist. LEXIS 8782, at *11 (E.D. Mich. Jan. 24, 2014) ("[I]n a situation such as here where an employment agreement purportedly limits an ADEA plaintiff's ability to bring a legal action to one year, a plaintiff is not required to file a legal action within one year if the EEOC action remains pending longer than one year. An ADEA plaintiff must have a meaningful opportunity to complete the administrative process, which includes receiving a right to sue letter from the EEOC, prior to filing a legal action. Any contractual provision that denies that right, such as the provision in this case, is unenforceable."); *O'Phelan v. Fed. Express Corp.,* No. 03 C 00014, 2005 WL 2387647, at *5, 2005 U.S. Dist. LEXIS 21531, at *15 (N.D. Ill. Sept. 27, 2005) ("The employment agreement's six month limit in which to file suit is not enforceable against O'Phelan's Title VII claim."); *Mabry v. W. & S. Life Ins. Co.,* No. 1:03 CV 848, 2005 WL 1167002, at *4–5, 2005 U.S. Dist. LEXIS 11042, at *11, 16 (M.D. N.C. Apr. 19, 2005) (holding that a six-month contractual limitations clause would preclude an employee from filing a Title VII suit and further noting that "requiring a party to prematurely file suit would unnecessarily increase the burden on the federal courts prior to the exhaustion of any administrative remedies, and would result in parallel claims pending before both the EEOC and the courts."); *Salisbury v. Art Van Furniture,* 938 F. Supp. 435, 438 (W.D. Mich. 1996) ("[T]he [six-month] contractual limitation certainly effected a 'practical abrogation' of the right to file an ADA claim and is, therefore, unreasonable.").

Here, as written, the six-month limitation would abrogate Ms. Wilson's ability to file suit based on any claim with an EEOC filing requirement, and is thus unenforceable as written.

**2. Changing the Date of Commencement**

Second, the Court must address whether the six-month limitation, as applied to Ms. Wilson's federal claims, should be reinterpreted or simply invalidated. On its face, the six-month contractual limitation would abrogate Ms. Wilson's ability to bring claims under Title VII. Because of this, UHCMC asks the Court to re-read the contractual limitation to begin at a time other than "the date of the employment action that is the subject of the claim or lawsuit." Appl. for Empl. 4. Specifically, UHCMC argues that the Court should read the six-month period as starting after the EEOC's 180-day exclusive period, following the holding in *Tyler v. FedEx Freight, Inc.*, No. 3:13-CV-419, 2015 WL 1880007 at *8, 2015 U.S. Dist. LEXIS 53662 at *20–21 (Apr. 23, 2015) (interpreting a limitations period running "from the date of the event forming the basis of my lawsuit" to instead commence upon the expiration of the EEOC's 180-day exclusive jurisdiction period.). The Court is not persuaded by *Tyler*.

The holding in *Tyler* relied on three previous cases from district courts within the Sixth Circuit. *Id.* at 7. A brief examination of these cases is instructive. In *Lewis*, an employment agreement stated all legal action or suit "must be brought within 180 days of the event giving rise to the claims or be forever barred. I waive any limitation period to the contrary." 241 F. Supp. 2d at 773. The *Lewis* court held the six-month limitation was unreasonable and consequently invalidated the clause because "the EEOC's period of exclusive jurisdiction would have the effect of abrogating Plaintiff's ability to bring a Title VII suit." *Id.* at 773. Similarly, in *Fritz,* "the Plaintiff agreed 'to litigate any statutory or common law claims' involving her employment

-10-

according to certain terms. Among those terms, was her agreement that any claim arising out of her employment must be filed 'within on hundred [sic] and eighty (180) calendar days or less if a statute or common law requires a shorter period, from the date the alleged claim arose.'" 835 F. Supp. 2d at 379. There, the court invalidated a 180-day limitation because "any period of 180 days or less is preempted by the EEOC's period of exclusive jurisdiction and necessarily precludes any judicial consideration of Plaintiff's claim." *Id.* at 383.

In contrast, in *Priemer v. Internatl. Auto. Components*, the court interpreted a six-month limitation to begin after the 180-day exclusive jurisdiction expired. 2013 WL 4718336, at *6, 2013 U.S. Dist. LEXIS 125074, at *15 (Sept. 3, 2013). However, the court did so because of specific language within the contractual limitations provision:

> Defendant first argues that Plaintiff's claims are untimely pursuant to a contractually shortened limitations period set forth in Plaintiff's employment application. The relevant provision states:
>
>> I further agree not to bring any action or suit relating directly or indirectly to my employment with IAC, or the termination of such employment, more than 6 months after the date or termination of such employment and I waive any statute of limitations to the contrary. If this provision is held invalid or unenforceable, I agree that such time period will be increased to the minimum extent necessary to make such provision valid and enforceable.
>
> . . . .
>
> The language at issue in this case provided that, even if the provision was invalid, the limitations period would "be increased to the minimum extent necessary to make such provision valid and enforceable." Plaintiff had, at minimum, 180 days before he could file a complaint in federal court under the ADEA. Under the contractual language in this case, the Court finds that Plaintiff's claims are untimely.

*Id.* at *5–6.

Case: 1:16-cv-01454-DAP Doc #: 25-1 Filed: 06/30/17 12 of 15. PageID #: 267
Case: 1:16-cv-01454-DAP Doc #: 35 Filed: 08/07/18 122 of 155. PageID #: 274

Exhibit 1

Of the three cases that the *Tyler* court based its holding on, only *Priemer* held that the limitation could be reread to commence at the end of the 180-day period, and that court found that implying such a delayed commencement of the limitations period was appropriate because of specific language which required the an increase of the contractual limitation (if held invalid) to the minimum amount necessary. *Id.* Thus, to the extent *Priemer* fairly re-interpreted the six-month limitation,[3] it did so in a situation distinguishable from Ms. Wilson's. In contrast, neither *Lewis* nor *Fritz* relied on such contractual language, are thus more parallel to the instant case, and are consequently more persuasive, here. Both *Lewis* and *Fritz* simply held that the limitation periods involved were invalid. *Lewis*, 241 F. Supp. 2d at 773; *Fritz*, 835 F. Supp. 2d at 383.

Moreover, even if the Court were to follow the reasoning in *Tyler*, and read the contract as saying something other than what it says on its face, Ms. Wilson's claims would be considered timely. The *Tyler* court considered two possible re-interpretation scenarios of the otherwise-unenforceable limitation clause.[4] *Tyler*, 2015 WL 1880007, at *8. One scenario began the clock at the expiration of the 180-day period, but the second construction of the limitation clause would add ninety days to the six-month limitation period (to account for the ninety-day notice period) to begin at the end of the EEOC's 180-day exclusive period. *Id.* In *Tyler*, the plaintiff's claims were not timely under either scenario. Conversely, were the Court to add ninety days to Ms. Wilson's six-month limitation period, beginning at the end of the EEOC's exclusive jurisdiction on April

---

[3] The Court is not opining upon a contract not before it.

[4] It should be noted that in *Tyler* the plaintiff did not challenge the validity of the contractual limitations provision. *Tyler*, 2015 WL 1880007, at *8.

-12-

27, 2015, the deadline to file would have been February 1, 2016, and all of Ms. Wilson's federal claims would have been timely filed. Compl. ¶ 8; Case Filing, 10, Doc #: 1-1.[5]

The waiver provision Ms. Wilson signed, as written, abrogates her right to sue, and the Court does not reread the waiver to say anything other than what it plainly says on its face. Consequently, the six-month limitation is unenforceable as to Ms. Wilson's federal claims.

**B. State Claims**

Based on the pleadings, the six-month contractual limitations clause appears enforceable as to Ms. Wilson's state law claims. Thus, these claims are time-barred and are accordingly dismissed.

Because, unlike the federal claims, the state law claims filed with the OCRC are not subject to any exclusivity period, the six-month limitation does not abrogate Ms. Wilson's ability to bring her state law claims. Additionally, Ohio courts have upheld six-months periods of limitation as reasonable. The parties cite two cases which illustrate the application, under Ohio law, of contract provisions similar to the one Ms. Wilson signed.

In *Claudio v. Univ. Hosps. Med. Ctr.*, the Cuyahoga Court of Common Pleas did not find that the six-month limitation was invalid but rather that other circumstances precluded enforcement. Case No. CV 15 944993 (Ct. of Common Pleas Cuyahoga Cty. Oct. 27, 2015). Specifically, the court observed that an online application that UHCMC provided the plaintiff "lacked consideration and that there was no mutuality of obligations in that the Defendant did not

---

[5] "In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds." Restatement (Second) of Contracts § 206 (1981).

promise to review the application or consider the Plaintiff for employment." *Id.* at *3. The court further considered that the online application did not give notice that it could not be printed after submission, that plaintiff received no copy of the application when she was hired, and that plaintiff attempted to engage with defendant's council but was not alerted to the existence of the alleged waiver until after the six-month period had expired. *Id.* All of these circumstances rendered the waiver in the online application unenforceable, and UHCMC's motion for summary judgment was denied. *Id.*

Conversely, in *Maxwell v. Univ. Hosps. Med. Ctr.*, an employee of UHCMC signed a waiver using the same language as the waiver Ms. Wilson signed. Case No. CV 15 840036 at *4 (Ct of Common Pleas Cuyahoga Cty. Feb. 1, 2016). The court held that the six-month period was reasonable and enforceable, observing that the Ohio legislature has deemed 180-day periods as a reasonable time for filing similar claims such as age discrimination, whistle blower claims, retaliatory discharge claims, and credit discrimination. *Id.* at *5. As a result, the court granted UHCMC's motion for summary judgment. *Id.* at *6.

Here, in her Amended Complaint, Ms. Wilson alleges that she applied for her position online and was not able to receive a copy of the last page which contains the six-month statute of limitations waiver, as in *Claudio*. Am. Compl. ¶ 13. Ms. Wilson also alleges that she was not aware of the waiver when she signed, and that she could not print a copy. *Id.* In her Opposition to the Motion, Ms. Wilson only argues that the application was submitted online "as far as we know" and that she did not get a copy of it during her employment. Opp. 11, Doc #: 21. However, neither the Complaint nor Amended Complaint makes clear sufficient circumstances surrounding the online application to render the agreement unenforceable. Furthermore, it

-14-

appears that Ms. Wilson also hand-wrote an application, a copy of which was attached to the Answer. The pleadings and moving papers are entirely silent as to the circumstances of this hand-written application.

Thus, based on the pleadings, there is no reason to find the waiver unreasonable or unenforceable as to Ms. Wilson's state law claims.

The Court notes this is a Motion for Judgment on the Pleadings and not a motion for summary judgment, as *Maxwell* and *Claudio* were. Thus, the facts available to the Court regarding the circumstances of Ms. Wilson's application are necessarily limited. While it is certainly not clear to the Court that Ms. Wilson will be able to allege facts sufficient to address the deficiencies described above, it is also not clear that a discussion about the circumstances surrounding her agreeing to the waiver would *necessarily* be futile. *See* Fed. R. Civ. P. 15(a)(2); *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015). Accordingly, Ms. Wilson's state law claims are dismissed without prejudice.

## IV. Conclusion

For the reasons stated above, the Motion for Judgment on the Pleadings, Doc # 13, is GRANTED in part. Ms. Wilson's state claims are dismissed without prejudice, as untimely; and her federal claims may remain. Specifically, Counts One, Two, Four, and Five of the Amended Complaint are dismissed insofar as they are based on Ohio law, but survive insofar they are based on federal law. Count Three survives. Count Six is dismissed.

**IT IS SO ORDERED.**

                                                     */s/ Dan A. Polster     June 30, 2016*
                                                     **DAN AARON POLSTER**
                                                     **UNITED STATES DISTRICT JUDGE**